AO 243 (Rev. 01/15)                                                                                    Page 2

## MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT

### SENTENCE BY A PERSON IN FEDERAL CUSTODY

| **United States District Court** | District | Southern District of Florida |
|---|---|---|
| Name *(under which you were convicted)*: <br> Manuel Lopez Castro | | Docket or Case No.: <br> 84-853-Cr-KEHOE |
| Place of Confinement: <br> FCI Beaumont Low | Prisoner No.: <br> 23504-004 | |
| UNITED STATES OF AMERICA <br><br> V. | Movant *(include name under which convicted)* <br><br> Manuel Lopez Castro | |

### MOTION

1. (a) Name and location of court which entered the judgment of conviction you are challenging:

   United States District Court, Southern District of Florida (Miami, Florida)

   (b) Criminal docket or case number (if you know):  84-853-Cr-KEHOE

2. (a) Date of the judgment of conviction (if you know):  12/18/1985

   (b) Date of sentencing:  12/16/1985

3. Length of sentence:  25 years

4. Nature of crime (all counts):

   RICO conspiracy (18 USC 1962) - Count I
   RICO (18 USC 1962) - Count II
   Travel Act (18 USC 1952) - Counts XI, XIII, XIV, XVI, XIX, XXII
   Wire Fraud (18 USC 1343) - Counts XXVI, XXVIII, XXIX

5. (a) What was your plea?  (Check one)
   (1)  Not guilty  ☑          (2)  Guilty  ☐          (3)  Nolo contendere (no contest)  ☐

   (b) If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or
   what did you plead guilty to and what did you plead not guilty to?

6. If you went to trial, what kind of trial did you have?  (Check one)          Jury ☑          Judge only ☐

7. Did you testify at a pretrial hearing, trial, or post-trial hearing?          Yes ☑          No ☐

8. Did you appeal from the judgment of conviction?          Yes ☑          No ☐

AO 243 (Rev. 01/15)

9.  If you did appeal, answer the following:

(a)  Name of court:   United States Court of Appeals, Eleventh Circuit

(b)  Docket or case number (if you know):   86-5005

(c)  Result:   Dismissed

(d)  Date of result (if you know):   4/7/1986

(e) Citation to the case (if you know):

(f) Grounds raised:

N/A

(g) Did you file a petition for certiorari in the United States Supreme Court?      Yes ☐      No ☑

If "Yes," answer the following:

(1) Docket or case number (if you know):

(2) Result:

(3) Date of result (if you know):

(4) Citation to the case (if you know):

(5) Grounds raised:

10.  Other than the direct appeals listed above, have you previously filed any other motions, petitions, or applications, concerning this judgment of conviction in any court?
Yes ☐    No ☑

11.  If your answer to Question 10 was "Yes," give the following information:

(a)  (1) Name of court:

(2) Docket or case number (if you know):

(3) Date of filing (if you know):

(4)  Nature of the proceeding:

(5)  Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐        No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(b) If you filed any second motion, petition, or application, give the same information:

(1) Name of court: _____

(2) Docket of case number (if you know): _____

(3) Date of filing (if you know): _____

(4) Nature of the proceeding: _____

(5) Grounds raised:

(6) Did you receive a hearing where evidence was given on your motion, petition, or application?

Yes ☐        No ☐

(7) Result: _____

(8) Date of result (if you know): _____

(c) Did you appeal to a federal appellate court having jurisdiction over the action taken on your motion, petition, or application?

(1) First petition:        Yes ☐        No ☐

(2) Second petition:        Yes ☐        No ☐

(d) If you did not appeal from the action on any motion, petition, or application, explain briefly why you did not:

12. For this motion, state every ground on which you claim that you are being held in violation of the Constitution, laws, or treaties of the United States. Attach additional pages if you have more than four grounds. State the facts supporting each ground.

**GROUND ONE:** Due process violation - sentence and conviction exceeding statutory jurisdiction where Travel Act and wire fraud statutes do not apply to conduct at issue, and basis for conviction under RICO is invalid.

    (a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

See attached memorandum.  In summary, imposition of convictions and sentences on Travel Act, wire fraud, and RICO offenses of which the movant was charged violates due process and exceeds federal statutory jurisdiction because: (1) as to wire fraud, under the pre-McNally version of 18 USC 1341, conduct consisting of obstructing the record collection function of the Internal Revenue Service, as to which there was no component or allegation of financial fraud, did not violate the wire fraud statute in 1985; (2) as to Travel Act allegations, under Eleventh Circuit precedent, conduct consisting of assisting another person in the transfer of his own assets for purposes of investment or purchase does not violate the 18 USC 1952 proscription on the distribution of criminal proceeds, nor can the subsequent enactment of money laundering statutes retroactively proscribe such conduct.  Further, the movant's convictions and sentences on RICO counts were premised on the invalid theory of Travel Act and wire fraud liability and there is no remaining viable basis for prosecution of the movant on the RICO counts. The defendant's conduct was not criminal and thus sentencing him for that conduct violated both jurisdictional limits and the Due Process Clause. The facts established at trial showed that the movant was an attorney who conducted real estate investment transactions, but failed to show any intent or attempt to distribute proceeds to criminal participants as required under the statute.  Nor did any conduct alleged or established at trial show any attempt to defraud within the meaning of the wire fraud statute, as this Court concluded on the facts relevant to this case and as determined in a co-defendant's appeal, U.S. v. Corona, 885 F.2d 766 (11th Cir. 1989).

    (b)  **Direct Appeal of Ground One:**

        (1)  If you appealed from the judgment of conviction, did you raise this issue?

            Yes ☐      No ☑

        (2)  If you did not raise this issue in your direct appeal, explain why:

Appeal was dismissed.

    (c)  **Post-Conviction Proceedings:**

        (1)  Did you raise this issue in any post-conviction motion, petition, or application?

            Yes ☐      No ☑

        (2)  If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

        (3)  Did you receive a hearing on your motion, petition, or application?

            Yes ☐      No ☐

        (4)  Did you appeal from the denial of your motion, petition, or application?

            Yes ☐      No ☐

        (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

            Yes ☐      No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

_____

Docket or case number (if you know): _____

Date of the court's decision: _____

Result (attach a copy of the court's opinion or order, if available):

_____

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

_____

**GROUND TWO:**   Due process violation - fundamental instructional error permitted conviction where Travel Act and wire fraud statute do not apply, and the resulting basis for the RICO convictions is invalid.

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

See attached memorandum.  In summary, the district court erroneously instructed the jury as to the elements of offenses under the Travel Act and the wire fraud statute and thereby caused the jury to return a guilty verdict on those counts as well as the RICO counts where the verdict was premised on a mistaken understanding of the scope of the Travel Act to include assisting in conveying funds for real estate purchases made by a drug trafficker and a mistaken understanding of the scope of the wire fraud statute as prohibiting conduct that interferes with record collection concerning financial transactions.  The jury was consequently not required to find the requisite elements of the offenses, including the specific intent or mens rea elements, thereby undermining the validity of the convictions.  Further, there was no evidence to show the movant's commission of any other form of charged criminal conduct as it pertains to the RICO charges.  Conviction on an invalid theory and in the absence of evidence of guilt violates the Due Process Clause.

(b)   **Direct Appeal of Ground Two:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?

Yes ☐         No ☑

(2)   If you did not raise this issue in your direct appeal, explain why:

Appeal was dismissed.

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?

Yes ☐         No ☑

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3)   Did you receive a hearing on your motion, petition, or application?

Yes ☐          No ☐

(4)   Did you appeal from the denial of your motion, petition, or application?

Yes ☐          No ☐

(5)   If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐          No ☐

(6)   If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND THREE:**   Due process and ex post facto violation - sentencing premised on fundamental error regarding parole statute and multiple offenses of conviction.

(a)  Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

See attached memorandum.  In summary, in imposing sentence, this Court relied on then-existing statutory requirements for parole consideration.  As a result of a later-enacted statute abolishing parole, the movant has been denied eligibility for parole and has seen his sentence converted into a non-parolable sentence that will require him to serve a far longer imprisonment sentence than that contemplated by the Court.  Application of post-sentencing statutory changes in the law render the sentencing decision violative of the Due Process Clause and constitute an ex post facto violation.  As a result, the defendant should be resentenced.  Further, the Court's

AO 243 (Rev. 01/15)

imposition of consecutive, rather than concurrent, sentences resulted from the erroneous convictions on the substantive counts.  The movant should therefore be resentenced so that his sentence rests on factually accurate grounds and without the impact of invalid convictions.

(b)  **Direct Appeal of Ground Three:**

    (1)  If you appealed from the judgment of conviction, did you raise this issue?

        Yes ☐   No ☑

    (2)  If you did not raise this issue in your direct appeal, explain why:

    Appeal was dismissed.

(c)  **Post-Conviction Proceedings:**

    (1)  Did you raise this issue in any post-conviction motion, petition, or application?

        Yes ☐   No ☑

    (2)  If you answer to Question (c)(1) is "Yes," state:

    Type of motion or petition:

    Name and location of the court where the motion or petition was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

    (3)  Did you receive a hearing on your motion, petition, or application?

        Yes ☐   No ☐

    (4)  Did you appeal from the denial of your motion, petition, or application?

        Yes ☐   No ☐

    (5)  If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

        Yes ☐   No ☐

    (6)  If your answer to Question (c)(4) is "Yes," state:

    Name and location of the court where the appeal was filed:

    Docket or case number (if you know):

    Date of the court's decision:

    Result (attach a copy of the court's opinion or order, if available):

(7)   If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

**GROUND FOUR:**

(a)   Supporting facts (Do not argue or cite law.  Just state the specific facts that support your claim.):

(b)   **Direct Appeal of Ground Four:**

(1)   If you appealed from the judgment of conviction, did you raise this issue?
Yes ☐          No ☐

(2)   If you did not raise this issue in your direct appeal, explain why:

(c)   **Post-Conviction Proceedings:**

(1)   Did you raise this issue in any post-conviction motion, petition, or application?
Yes ☐          No ☐

(2)   If you answer to Question (c)(1) is "Yes," state:

Type of motion or petition:

Name and location of the court where the motion or petition was filed:

Docket or case number (if you know):

Date of the court's decision:

Result (attach a copy of the court's opinion or order, if available):

(3) Did you receive a hearing on your motion, petition, or application?

Yes ☐        No ☐

(4) Did you appeal from the denial of your motion, petition, or application?

Yes ☐        No ☐

(5) If your answer to Question (c)(4) is "Yes," did you raise the issue in the appeal?

Yes ☐        No ☐

(6) If your answer to Question (c)(4) is "Yes," state:

Name and location of the court where the appeal was filed:

Docket or case number (if you know): 

Date of the court's decision: 

Result (attach a copy of the court's opinion or order, if available):

(7) If your answer to Question (c)(4) or Question (c)(5) is "No," explain why you did not appeal or raise this issue:

13. Is there any ground in this motion that you have <u>not</u> previously presented in some federal court? If so, which ground or grounds have not been presented, and state your reasons for not presenting them:

Grounds raised were not previously presented because they were unavailable and the appeal was dismissed.

14. Do you have any motion, petition, or appeal <u>now pending</u> (filed and not decided yet) in any court for the you are challenging?     Yes ☐     No ☑

If "Yes," state the name and location of the court, the docket or case number, the type of proceeding, and the issues raised.

15.  Give the name and address, if known, of each attorney who represented you in the following stages of the you are challenging:

(a)  At the preliminary hearing:

(b)  At the arraignment and plea:

(c)  At the trial:
Thomas Sclafani, 633 S Andrews Ave Ste 500, Fort Lauderdale, FL 33301

(d)  At sentencing:
Thomas Sclafani, 633 S Andrews Ave Ste 500, Fort Lauderdale, FL 33301

(e)  On appeal:
Thomas Sclafani, 633 S Andrews Ave Ste 500, Fort Lauderdale, FL 33301

(f)  In any post-conviction proceeding:

(g)  On appeal from any ruling against you in a post-conviction proceeding:

16.  Were you sentenced on more than one court of an indictment, or on more than one indictment, in the same court and at the same time?          Yes ✔          No ☐

17.  Do you have any future sentence to serve after you complete the sentence for the judgment that you are challenging?          Yes ☐          No ✔

(a)  If so, give name and location of court that imposed the other sentence you will serve in the future:

U.S. District Court, S.D. Fla.

(b)  Give the date the other sentence was imposed: 6/24/2013

(c)  Give the length of the other sentence: 60 months

(d)  Have you filed, or do you plan to file, any motion, petition, or application that challenges the judgment or sentence to be served in the future?          Yes ✔          No ☐

18.  TIMELINESS OF MOTION: If your judgment of conviction became final over one year ago, you must explain why the one-year statute of limitations as contained in 28 U.S.C. § 2255 does not bar your motion.*

The time bar does not apply to bar this motion because the movant is actually innocent of the offenses under applicable law, see McQuiggin v. Perkins, 569 U.S. 383, 392, 133 S. Ct. 1924, 1931 (2013), and because as to certain claims relief may alternatively be granted under Fed. R. Crim. P. 35 (1985).  Further, because the scope of statutory jurisdiction was exceeded in the imposition of sentence, application of a time bar would be constitutionally precluded.

---

\* The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") as contained in 28 U.S.C. § 2255, paragraph 6, provides in part that:

A one-year period of limitation shall apply to a motion under this section.  The limitation period shall run from the latest of –

(1)   the date on which the judgment of conviction became final;

(2)   the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making such a motion by such governmental action;

(3)   the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4)   the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

Therefore, movant asks that the Court grant the following relief:

grant the motion for to vacate his convictions and sentence

or any other relief to which movant may be entitled.

/s/  Richard C. Klugh
_____
Signature of Attorney (if any)

Executed (signed) on _____ December 29, 2017 _____ (date)

_____
Signature of Movant

**ADDENDUM – 28 U.S.C. § 2255 CLAIMS**

The fact that the movant can demonstrate "actual innocence" makes his circumstances both rare and extraordinary. The Supreme Court has made clear that the test for "actual innocence" is a stringent and narrow one. *See House v. Bell*, 547 U.S. 518 (2006). Furthermore, as movant argues, refusing to remedy a conviction for conduct beyond the scope of the statute would be a miscarriage of justice and must surely constitute "extraordinary circumstances." *See Murray v. Carrier*, 477 U.S. 478, 496 (1986) (describing as "an extraordinary case" "where a constitutional violation has probably resulted in the conviction of one who is actually innocent").

**Claim 1: Fifth Amendment Due Process Violation.**

The convictions in this case cannot survive due process scrutiny. Where a defendant is convicted and punished for an offense that the law does not make criminal, he has a claim that is cognizable under 28 U.S.C. § 2255. *Davis v. United States*, 417 U.S. 333, 346-47 (1974) ("If this contention is well taken, then Davis' conviction and punishment are for an act that the law does not make criminal. There can be no room for doubt that such a circumstance inherently results in a complete miscarriage of justice and present(s) exceptional circumstances that justify collateral relief under [28 U.S.C. §] 2255."); *see also Mays v. United States*, 817 F.3d 728, 736 (11th Cir. 2016) (collateral review available where the defendant was convicted of nonexistent offense); *accord Alaimalo v. United States*, 645 F.3d 1042, 1047 (9th Cir.2011) ("A petitioner is actually innocent when he was convicted for conduct not prohibited by law.").

The defendant was indicted on the basis of a fundamental error in the application of the wire fraud statute, 18 U.S.C. § 1343, and the Travel Act, 18 U.S.C. § 1952(a). The theory of prosecution was that by facilitating the spending of money belonging to a drug trafficker for the purpose of

1

purchasing real estate, the defendant had traveled with the intent to distribute illegal proceeds and had defrauded the Internal Revenue Service's right to correct information regarding taxpayers even absent any intent to cheat on or evade taxes. The government distorted the two statutes because at the time of the conduct at issue, there was no money laundering statute and no honest services mail fraud offense. Lacking a valid statute on which to prosecute the defendant, a lawyer who provided assistance to a drug dealer in regard to investments and corporate entities, the government simply overextended mail fraud and travel prohibitions to convict the defendant. Because intervening case law—including by the Eleventh Circuit in this very prosecution—establishes that the conduct at issue did not violate federal law and that the conviction and lengthy imprisonment of someone who is actually innocent of charged conduct constitutes a manifest injustice, relief is warranted under 28 U.S.C. § 2255.

A. **Travel Act** (Counts XI to XXII). The defendant was charged under 18 U.S.C. § 1952(a)(1) with travel and use of the mails "with intent to ... distribute the proceeds of any unlawful activity." As to Lopez-Castro, this was described in the indictment as "racketeering activity." The indictment charged as a crime, and the jury instructions confirmed the criminal allegation, that the defendant acted "with the intent to distribute the proceeds of an un awful activity" ... "and thereafter ... did perform and cause to be performed acts to distribute the proceeds of the aforementioned unlawful activity." The theory of the charge was that by helping a criminal transact his purchases with proceeds, the defendant *distributed* the funds. But the indictment and jury instructions misapprehended the concept of distribution under the Travel Act and the reasons why Congress needed in subsequent years to enact the various provisions of the money laundering statute.

The government failed to establish a violation of the Travel Act, 18 U.S.C. § 1952(a)(1)(proscribing travel in interstate commerce with the intent to distribute the proceeds of an

2

unlawful activity), where there was no proof that the defendant distributed the proceeds of unlawful activity to a criminal conspirator; instead, he simply bought property in the regular course of trade on behalf of another, for which he received a normal fee for his services.

In the appeal pursued by two of Lopez-Castro's co-defendants, *United States v. Corona*, 885 F.2d 766 (11th Cir. 1989), the Eleventh Circuit recognized that investing or spending money for a drug trafficker does not constitute illegal distribution under the Travel Act: "Distribution is not just the disposing of or spending of the proceeds, however, but ***must involve disbursement to persons who would be entitled to some proceeds from the criminal enterprise.***" *Id.* at 773 (emphasis added). In the present case, the unlawful proceeds had already been distributed to all of the conspirators *before* any real estate purchase was made by the trafficker for his own benefit.

Further, the Court explained in *Corona* that distribution for purposes of the Travel Act does not encompass the purchase and sale of goods at market prices, as engaged in by Lopez-Castro here:

> In *United States v. Cole*, 704 F.2d 554, 558 (11th Cir. 1983), this Court employed the definition of "distribution" given in *United States v. Lightfoot*, 506 F.2d 238 (D.C. Cir. 1974). *Lightfoot* explained:
>
> > [T]he word "distribute" carries a connotation of distribution of illegal proceeds to persons in organized crime conspiracies. Certainly the person receiving them must be entitled to them for reasons other than normal and otherwise lawful purchase and sale of goods at market prices.
>
> *Id.* at 242. The court in *Lightfoot* held that a participant in a prostitution ring did not "distribute" proceeds of the unlawful activity when he crossed into another state and purchased a car from a dealer having no knowledge of the illegal activity. The court noted, however, that it would have faced "a very different case if defendant had bought the car during interstate travel and given it to one of his prostitutes as compensation." *Id.*

885 F.2d at 733.

Lopez-Castro, unlike his codefendant in *Corona* did not receive a percentage of the

ownership of the real estate, thereby entitling co-defendant Corona to a share of the proceeds "for reasons other than normal and otherwise lawful purchase and sale of goods at market prices." *Corona*, 885 F.2d at 733 (quoting *Lightfoot*, 506 F.2d at 242; *Cole*, 704 F.2d at 558). As the Eleventh Circuit recognized, Corona was the *recipient* of the purchase; as such, the Court found that he was responsible under 18 U.S.C. § 2 as a principal in the distribution of proceeds. *Corona,* 885 F.2d at 733. Lopez-Castro, however, was not such a recipient, nor was there any other criminal participant who received any funds *distributed* by action of Lopez-Castro.[1]

In contrast to Ray Corona, Lopez-Castro was *not* the recipient of any of the property he purchased. Rather, he was simply purchasing property for another, *after* the proceeds of unlawful activity had already been distributed to all of the criminal conspirators. Importantly, Lopez-Castro – unlike Corona – received merely a normal, non-bogus fee for his services. Moreover, the purchases by Lopez-Castro were made in the course of normal market transactions.

As the D.C. Circuit explained in the *Lightfoot* decision on which the Eleventh Circuit relied, "The word 'distribute' simply does not encompass the concept of buying an article in the normal course of trade." *United States v. Lightfoot*, 506 F.2d 238, 241 (D.C. Cir. 1974). Instead, "the word 'distribute' carries a connotation of distribution of illegal proceeds to persons in organized crime

---

[1] The Travel Act "was aimed primarily at organized crime and, more specifically, at persons who reside in one State while operating or managing ***illegal*** activities located in another." *Rewis v. United States*, 401 U.S. 808, 811, 91 S. Ct. 1056, 1059 (1971) (emphasis added). Under the Travel Act, distribution of proceeds requires something more that merely proceeds and investing them—requires a divestment of funds, a turnover of funds to another person, rather than just a use of the funds to buy or invest them. A later federal statute was enacted to cover the conduct the defendant was accused of: Under 18 U.S.C. § 1956(a)(2)(A), "[w]hoever transports, transmits, or transfers, or attempts to transport, transmit, or transfer a monetary instrument or funds from a place in the United States to or through a place outside the United States or to a place in the United States from or through a place outside the United States" with the intend to conceal or promote criminality is guilty of money laundering. But such investment activity was not unlawful in 1985. Hence the need for the later-enacted money laundering provisions.

4

conspiracies. Certainly the person receiving them must be entitled to them for reasons other than normal and otherwise lawful purchase and sale of goods at market prices." *Id.* at 242 (rejecting the theory of conviction where "the government's case on this score that the funds with which defendant paid for the Cadillac were derived from prostitution—one of the organized crime offenses specifically referred to in the statute—and, hence, that his purchase represented 'distribut[ing] the proceeds of [an] unlawful activity'"); *see*, *e.g.*, *Abuelhawa v. United States*, 129 S.Ct. 2102 (2009) (rejecting expansive government's interpretation of facilitation of offense); *United States v. Lopez-Vanegas*, 493 F.3d 1305, 1313 (11th Cir. 2007) (where "Congress has shown it is capable of addressing acts involving controlled substances occurring outside of the United States," but chose not to do so, it is impermissible to read a further extraterritorial application into a statute).

B. **Wire fraud** (Counts XXV to XXX).  The government neither alleged nor proved wire fraud in violation of 18 U.S.C. § 1343.  Counts XXV-XXX of the indictment, charging that the defendants "impeded" the agencies' "collection of data and reports" of specified currency transactions and transportation of currency, fail to set forth an offense under 18 U.S.C. § 1343. The indictment provides that is an offense to "defraud the United States and agencies thereof, the United States Customs Service and the Internal Revenue Service, by impairing, obstructing and defeating its lawful governmental functions of the collection of data and reports of domestic currency transactions."  Contrary to the indictment and the jury instructions, an individual's mere failure to provide information to U.S. Customs or the IRS does not constitute "obtaining money or property" from those agencies within the meaning of the wire fraud statute, 18 U.S.C. § 1343.

In *Cleveland v. United States*, 531 U.S. 12, 26 (2000), the Supreme Court ruled that 18 U.S.C. § 1343 punishes only schemes to deprive victims of their "money or property," such that the "object of the fraud ... must be '[money or] property' in the victim's hands."  Applying this

5

definition to an unissued state license to operate video poker machines, the Supreme Court concluded that the state's interest was not "property," but regulatory in nature. *Id.*, 531 U.S. at 22-23. The Court stressed additionally that the government had not alleged that defendant Carl Cleveland had defrauded the state "of any money to which the State was entitled by law." *Id.* at 22 ("Tellingly, as to the character of Louisiana's stake in its video poker licenses, the Government nowhere alleges that Cleveland defrauded the State of any money to which the State was entitled by law.*"*); s*ee also Pasquantino v. United States*, 544 U.S. 349, 355-57 & n.2 (2005)(definition of property adopted in *Cleveland* applies to the wire fraud statute, since "we have construed identical language in the wire and mail fraud statutes *in pari materia*").

The *Pasquantino* Court distinguished a true tax evasion fraud from merely concealing information. The Court held that the right to tax revenue is property within the meaning of § 1343, in the context of defendant's smuggling of liquor across the border and failure to declare the liquor on customs forms, depriving Canada of the right to taxes – **but there was no such allegation or proof in the present case**. 544 U.S. at 355-57 ("Petitioners' tax evasion deprived Canada of that money, inflicting an economic injury no less than had they embezzled funds from the Canadian treasury. The object of petitioners' scheme was to deprive Canada of money legally due, and their scheme thereby had as its object the deprivation of Canada's 'property.'"; "The Government alleged and proved that petitioners' scheme aimed at depriving Canada of money to which it was entitled by law. ... *Cleveland* is therefore consistent with our conclusion that Canada's entitlement is 'property' as that word is used in the wire fraud statute.").

The indictment in the present case alleges "a scheme to defraud" but fails to specify that the object of the scheme was to deprive the United States or its agencies of its "money or property." As in *Cleveland*, the indictment notably does *not* allege that the defendant had defrauded the U.S.

6

or its agencies of "any money [or property] to which it was entitled by law." 531 U.S. at 22. Moreover, as in *Cleveland*, where the provision of inaccurate information did not constitute a scheme to defraud, so too, here, the mere failure to disclose information does not amount to wire fraud. *See United States v. Sadler*, 750 F.2d 585, 591 (6th Cir. 2014)(Section 1343 is "'limited in scope to the protection of *property rights*,' and the ethereal right to accurate information doesn't fit that description. *McNally* [*v. United States*] 483 U.S. at 60, 107 S.Ct. 2875 [(1987)] (emphasis added). Nor can it plausibly be said that the right to accurate information amounts to an interest that 'has long been recognized as property.' *Cleveland*, 531 U.S. at 23, 121 S.Ct. 365 (internal quotation marks omitted)").

To interpret the statute more broadly, the Court in *Cleveland* concluded, would "invite ... a sweeping expansion of federal criminal jurisdiction in the absence of a clear statement by Congress." *Id.* at 24. Similarly, in defendant Lopez-Castro's case, finding that the mere failure to report regulatory information constitutes a deprivation of money or property "would subject to federal [wire] fraud prosecution a wide range of conduct traditionally regulated by state and local authorities." *Id.* As the Supreme Court has made clear, "[W]hen there are two rational readings of a criminal statute, one harsher than the other, we are to choose the harsher only when Congress has spoken in clear and definite language." *McNally*, 483 U.S. at 359-60.

In *McNally*, the Supreme Court held that § 1341 was designed only to protect people from schemes to deprive them fraudulently of their money or property. 483 U.S. at 360. In holding that the fraud conviction in *McNally* was invalid, the Court further pointed out that, "as the action comes to us, *there was no charge and the jury was not required to find* that the Commonwealth itself was

7

defrauded of any money or property." *Id.* (emphasis added). [2] As in *McNally*, there was no charge against defendant Lopez-Castro, nor was the jury instructed to find, that the government or any government agency was defrauded of money or property.  In these circumstances, the defendant's wire fraud conviction is infirm.  *See id.* ("There are no constructive offenses; and before one can be punished, it must be shown that his case is plainly within the statute."  *Fasulo v. United States*, 272 U.S. 620, 629, 47 S.Ct. 200, 202, 71 L.Ed. 443 (1926).  Rather than construe the statute in a manner that leaves its outer boundaries ambiguous and involves the Federal Government in setting standards of disclosure and good government for local and state officials, we read § 1341 as limited in scope to the protection of property rights. If Congress desires to go further, it must speak more clearly than it has.").

"[T]his circuit has made it clear that 'a decision which determines that Congress never intended certain conduct to fall within the proscription of a criminal statute must necessarily be retroactive.'" *Lomelo,* 891 F.2d at 1515 n.8 (citing *Belt v. United States*, 868 F.2d 1208, 1211 (11th Cir. 1989); *United States v. Elkins*, 885 F.2d 775, 781 (11th Cir.1989).  There can be no wire fraud where, as here, the defendant was neither alleged nor proved to have deprived or intended to deprive the government or government agency of money or property.  *See United States v. Sadler*, 750 F.3d 585 (6th Cir. 2014).

---

[2] Following *McNally*, Congress enacted 18 U.S.C. § 1346, which defined the term "scheme or artifice to defraud" to include a scheme or artifice to deprive another of the intangible right of honest services.  The Supreme Court held in *Skilling v. United States*, 130 S.Ct. 2896 (2010); *Black v. United States*, 130 S.Ct. 2963 (2010);and *Weyhrauch v. United States*, 130 S.Ct. 2971 (2010), that the "honest service" provision of 18 U.S.C. 1346 is unconstitutionally vague. In *Skilling*, the Supreme Court ruled that 1346 criminalizes only schemes to defraud the public that involve bribes and kickbacks.  "Reading the statute to proscribe a wider range of offensive conduct, we acknowledge, would raise the due process concerns underlying the vagueness doctrine. To preserve the statute without transgressing constitutional limitations, we now hold that § 1346 criminalizes only the bribe-and-kickback core of the pre-*McNall*y case law."  *Id.* at 408-09.

Before 1987, numerous courts had interpreted the fraud statute broadly to affirm convictions involving schemes to defraud victims of all kinds of intangible rights, including a right to privacy and honest elections. The Supreme Court stopped this expanding universe of intangible-right protections, limiting the fraud statutes' scope to rights that sounded in property. *See McNally*, 483 U.S. at 360, 107 S.Ct. 2875. Congress responded to *McNally* in 1988, but even then its response was limited. Instead of reinstating the universe of previously protected intangible rights, it embraced just one of them: "the intangible right of honest services," which protects citizens from public-official corruption. 18 U.S.C. § 1346. *See United States v. Poirier,* 321 F.3d 1024 (11th Cir. 2003)(affirming wire fraud conviction based on scheme to defraud a county by taking money and property from county – confidential business information pertaining to competitive bidding process – and depriving county of codefendant's honest services; breach of duty in disclosing confidential records; confidential business information long recognized as property – unlike Lopez-Castro's case, which consisted of withholding information from a regulatory agency; no recognition that such information was "property" of the government, but instead was sought pursuant to a regulatory process).

*Poirier* relied on *Carpenter v. United States*, 484 U.S. 19 (1987), in which the Supreme Court had affirmed wire and mail fraud convictions based on newspaper employee's pre-publication disclosure of confidential business information concerning securities transactions; Court concluded in *Carpenter* that the confidential business information in the stories prior to publication was "property" – the right to exclusive use of the information, 484 U.S. at 26-27– protected by the wire and mail fraud statutes. *Poirier* and *Carpenter* are wholly unlike Lopez-Castro's case, which does not involve the disclosure of confidential information, but merely failing to disclose or report information to regulatory agencies. Confidential business information, as the 11th Circuit

9

recognized in *Carpenter,* and *Poirier*, "confidential business information has long been recognized as property." 321 F.3d at 1030 (quoting *Carpenter*, 484 U.S. at 26). This does not pertain to the information in *Lopez-Castro*'s case, which did not represent "money or property in the government's hands," as required to constitute wire fraud. *Cleveland*, 531 U.S. at 26.

Cases interpreting the mail fraud statute are directly relevant to interpretation of the wire fraud statute since the two are worded almost identically and are, therefore, "analyzed in the same way." *United States v. Slevin*, 106 F.3d 1086, 1088 (2d Cir. 1996). The Supreme Court has repeatedly articulated the rule of construction that "when there are two rational readings of a criminal statute, one harsher than the other, [courts] are to choose the harsher only when Congress has spoken in clear and definite language." *McNally*, 483 U.S. at 359-60. In particular, the Court has instructed that this rule of lenity is an "interpretive guide [that] is especially appropriate in construing § 1341 [and § 1343] because, as this case demonstrates, mail [or wire] fraud is a predicate offense under ... the money laundering statute." *Cleveland*, 531 U.S. at 25 (quoting *Rewis v. United States*, 401 U.S. 808, 812 (1971) (Travel Act case)) (citations omitted).

At the very least, the statutory language is ambiguous, invoking the rule of lenity in criminal prosecutions. This "longstanding principle[ ] ... demand[s] resolution of ambiguities in criminal statutes in favor of the defendant." *Hughey v. United States,* 495 U.S. 411, 110 S.Ct. 1979, 1985 (1990) (citation omitted). A "time-honored interpretive guideline," the rule of lenity serves to insure both that there is fair warning of the boundaries of criminal conduct and that legislatures, not courts define criminal liability. *Crandon v. United States*, 494 U.S. 152, 110 S.Ct. 997, 1002 (1990)**.**

In *United States v. Peter*, 310 F.3d 709 (11th Cir. 2002), the defendant pled guilty to a single count of conspiracy to violate the criminal Rico statute, based upon a predicate mail fraud violation for "misrepresentations in license applications he mailed to the Florida Division of Alcoholic

10

Beverages & Tobacco." Relying on *Cleveland v. United States*, 531 U.S. 12, Peter argued in a coram nobis petition that the misrepresentations alleged in his indictment to which he pled guilty pertained solely to non-property fraud and therefore did not constitute a crime under *Bousley v. United States*, 523 U.S. 614, 118 S.Ct., 1604 (1998).  The Eleventh Circuit found that the defendant's conduct was never a crime and that relief must be granted despite the guilty plea and the waiver of 28 U.S.C. § 2255 remedies.

Pursuant to *Peter*, the law recognizes that there must be a vehicle to correct errors of this most fundamental character.  The question for the *Peter* Court was whether the "error comprised by a district court's acceptance of his plea was of such a 'fundamental character' as to have the proceeding itself irregular and invalid." *Peter*, 310 F.3d at 712. In granting the writ, the Court in *Peter* held that the error so fundamental as to be "jurisdictional" in the sense that the allegations, even if proven true, did not constitute a crime and relief was required to remedy the manifest injustice.

**Claim 2: Fifth Amendment Due Process Violation.**

The jury instructions given by the district court in this case permitted the jury to convict the defendant on RICO and other counts on the erroneous theory that his actions—consisting principally of performing legal work to facilitate the purchase of real estate with tainted funds[3]—which were not in themselves unlawful(*see* Claim 1) in some way still violated provisions of the wire fraud statute and the Travel Act.

With regard to the void wire fraud theory that caused this Court, in proceedings subsequent to the defendant's sentencing, to dismiss the fraud charges against the Corona co-defendants, it is

---

[3]  "Fernandez owned a 50-acre Ocala, Florida horse ranch worth $1,000,000, seven beach-front acres including three buildings at Vero Beach, several other properties, and a $90,000 boat, all bought with his drug earnings." *Corona*, 885 F.2d at 769.

11

clear that this Court has already recognized that permitting the case to go to the jury on a theory of non-financial fraud was a fundamental error.  *See also United States v. Shotts*, 145 F.3d 1289, 1295-96 (11th Cir. 1998) (business license not "property" protected by fraud statutes); *United States v. Conover*, 845 F.2d 266, 271 (11th Cir. 1988), *superseded by*, 18 U.S.C. § 1346 ("detriment to one's employer" not property right protected by fraud statutes).  *See also United States v. Henry*, 29 F.3d 112, 113 (3d Cir. 1994) (interest in fair bidding opportunity not property protected by fraud statutes); *United States v. Slay*, 858 F.2d 1310, 1316 (8th Cir. 1988) (withholding information from a governmental entity is insufficient to uphold a mail fraud conviction: "Withholding valuable information from the City is not the same thing as depriving the City of its property, and only the latter conduct violates the mail fraud statutes."); *United States v. Dadanian,* 856 F.2d 1391 (9th Cir. 1988) (failure to supply property element renders indictment invalid); *United States v. Lance*, 848 F.2d 1497 (10th Cir. 1988) (paying kickbacks does not violate the "property" requirement); *United States v. Conover*, 845 F.2d 266 (11th Cir. 1988) (breach of fiduciary duty does not violate the mail fraud statute); *Lomelo v. United States*, 891 F.2d 1512, 1516 (11th Cir. 1990)(scheme to defraud must result in loss of money or property).

With regard to the Travel Act instructions, the jury instructions permitted conviction on the theory of mere distribution of tainted funds, rather than distribution to a criminal participant as is clearly required under the Eleventh Circuit's decision as to the Corona co-defendants.  *United States v. Corona*, 885 F.2d 766, 768 (11th Cir. 1989) ("Two days after the verdicts, the Supreme Court decided *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987). Pursuant to *McNally*'s limitations on the applicability of the mail fraud statutes, the district court dismissed the mail fraud counts and the mail fraud predicate acts in the RICO count, which resulted in dismissal of the RICO count as to Rafael, but not as to Ray.").

12

As the Eleventh Circuit explained, in addressing the limitations of the Travel Act prosecution in *Corona*,

> Distribution is not just the disposing of or spending of the proceeds, however, but must involve disbursement to persons who would be entitled to some proceeds from the criminal enterprise. In *United States v. Cole*, 704 F.2d 554, 558 (11th Cir. 1983), this Court employed the definition of "distribution" given in *United States v. Lightfoot*, 506 F.2d 238 (D.C.Cir. 1974). *Lightfoot* explained:
>
> > [T]he word "distribute" carries a connotation of distribution of illegal proceeds to persons in organized crime conspiracies. Certainly the person receiving them must be entitled to them for reasons other than normal and otherwise lawful purchase and sale of goods at market prices.
>
> *Id.* at 242. The court in *Lightfoot* held that a participant in a prostitution ring did not "distribute" proceeds of the unlawful activity when he crossed into another state and purchased a car from a dealer having no knowledge of the illegal activity. The court noted, however, that it would have faced "a very different case if defendant had bought the car during interstate travel and given it to one of his prostitutes as compensation." *Id.*

*Corona*, 885 F.2d at 773–74.

The actual innocence of the defendant and the manifest injustice of the convictions in light of the constitutional error in jury instructions compels that relief be granted.

**Claim 3:  Fifth Amendment Due Process Violation and Ex Post Facto Violation.**

The sentences imposed in this case violate the constitution on two grounds.  First, in imposing sentence, the Court relied on then-existing statutory requirements for parole consideration. As a result of a later-enacted statute abolishing parole, the movant has been denied eligibility for parole and has seen his sentence converted to a non-parolable sentence that will require him to serve a longer imprisonment sentence than contemplated by the Court.  Application of post-sentencing statutory changes in the law render the sentencing decision violative of the Due Process Clause and constitute an ex post facto violation.  As a result, the defendant should be resentenced.

In *United States v. Dean*, 752 F.2d 535, 538 (11th Cir. 1985), the Eleventh Circuit

13

distinguished between a sentence imposed on the statutory of erroneous reliance on an illusory statutory guarantee and a mere misappraisal of the discretionary application of the statutory guarantee, finding no sentence illegality where the district court believed the Parole Commission would exercise discretion in particular manner in a particular case.  But in the present case, the district court clearly relied on the full panoply of statutory rights being available to the defendant, and the foreclosure of those rights in the defendant's case renders the sentence illegal.

Further, to the extent the sentence as imposed is deemed to permit application of the statutory amendments that deprive the defendant of his right to parole eligibility, the sentence would violate the Ex Post Facto Clause.  *Lynce v. Mathis*, 519 U.S. 433 (1997) (statute which had retroactively cancelled provisional early release credits violated ex post facto clause by increasing prisoner's punishment). *See also United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219, 1225 (1997) ( "[D]ue process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope ....").

Second, this  Court's imposition of ***consecutive***, rather than ***concurrent***, sentences on the multiple counts of conviction resulted from the erroneous convictions on substantive counts as to which the defendant is actually innocent.  Because the consecutive nature of the sentences rested on convictions of which the defendant is actually innocent, maintaining consecutive sentences in this case would constitute a manifest injustice.  The movant should therefore be resentenced so that his sentence rests on factually accurate grounds and without the impact of invalid convictions.

A sentencing court cannot rely on false material assumptions without violating the Due Process Clause. *See United States v. Tucker*, 404 U.S. 443 (1972); *Townsend v. Burke*, 334 U.S. 736 (1948); *United States v. Baylin*, 696 F.2d 1030 (3d Cir. 1982); *United States v. Tobias*, 662 F.2d 381 (5th Cir. 1981); United States v. Stein, 544 F.2d 96 (2d Cir. 1976); *United States v. Espinoza*, 481

14

F.2d 553 (5th Cir. 1973); *United States v. Weston*, 448 F.2d 626 (9th Cir.1971); *United States v. Malcolm*, 432 F.2d 809 (2d Cir. 1970). But the "false assumptions" in each of those cases related to a material fact, not a prediction about some future event. *See Tucker*, 404 U.S. at 447 (defendant's prior criminal record); *Townsend*, 334 U.S. at 740-41 (defendant's prior criminal record); Baylin, 696 F.2d at 1033-35 (defendant's prior "illicit activities"); *Tobias*, 662 F.2d at 388 (defendant's intent to manufacture large quantity of PCP; sentencing court may not rely on "incorrect assumptions from the evidence"); *Stein*, 544 F.2d at 100 (defendant's attempt to "fix" prior sentence and defendant's feigned suicide to avoid going to jail); *Espinoza*, 481 F.2d at 555 (defendant's "bad record"; sentencing court may not rely on erroneous "factual assumption"); *Weston*, 448 F.2d at 633-34 (defendant's prior dealings in narcotics); *Malcolm*, 432 F.2d at 816 (defendant's prior criminal record; sentencing court may not rely on "material false assumptions as to any facts").

The consecutive sentences in this case rested on materially false assumptions as to the nature and number of convictions, the criminality of the conduct, and other crucial factors in the sentencing decision.

WHEREFORE Movant requests that the Court grant his requests to vacate his convictions and sentence.

15